UDEN, APPELLANT, *v.* THE B. F. GOODRICH CO., APPELLEE.

(Decided January 19, 1938.)

*Messrs. Hadley, Weaver & Vale* and *Messrs. Cowan, Adams & Adams,* for appellant.

*Messrs. Waters, Andress, Wise, Roetzel & Maxon,* for appellee.

STEVENS, P. J.   John Uden and the plaintiff, Amy V. Uden, were married in 1916 and lived together as husband and wife until 1925, during which period two children, Alberta and Gilford Uden, were born as the issue of said marriage.   In June, 1925, John Uden separated from Amy Uden and said minor children. In September of 1925, C. J. Uden, a brother of John Uden, purchased a house on Bertha avenue in the city of Akron in the name of Amy V. Uden, which house was paid for by the said C. J. Uden from his earnings.

Thereafter, C. J. Uden, Amy V. Uden and said minor children occupied said house, Amy V. Uden per-

forming the domestic duties necessary to the maintenance thereof, and C. J. Uden turning over his earnings to Amy V. Uden for the use of the group. The payments upon said house as they became due were paid from the earnings of C. J. Uden; insurance was taken out upon his life in favor of Amy V. Uden, for which insurance C. J. Uden paid; Amy Uden and her minor children continued to reside with C. J. Uden, in the house to which reference has been made, until his death, which occurred on June 9, 1933, and resulted from post-operative pneumonia following an operation for a strangulated hernia claimed to have been sustained by C. J. Uden in the course of his employment; but during all of said period (from June, 1925, to June, 1933) John Uden, the husband of Amy V. Uden and the father of said minor children, continued to reside in Akron, and contributed to the support of his wife and their said children an average of $37.84 a month. John Uden and Amy V. Uden were never divorced, nor was any action for alimony ever instituted against John Uden by his wife.

On October 24, 1934, Amy V. Uden filed with the Industrial Commission of Ohio an application for an "adjustment of claim in the case of fatal injury," wherein she claimed that C. J. Uden died as a result of an injury sustained in the course of his employment as an employee of The B. F. Goodrich Company; that she made said application on her own behalf as beneficiary and as a dependent upon said C. J. Uden, and also upon behalf of Alberta Uden, age 14, and Gilford Uden, age 16, niece and nephew of the deceased C. J. Uden, who were partially dependent upon the deceased for support.

An application was also made for the payment of $727.10 for medical and hospital bills, funeral expenses, etc.

The employer, The B. F. Goodrich Company, filed

its answer, in which it denied that said C. J. Uden sustained an injury on the date alleged, and denied that decedent's death was caused by an injury sustained in the course of or arising out of his employment with The B. F. Goodrich Company. Proof was furnished in support of the respective claims of the parties, and the Industrial Commission on April 17, 1935, denied claimant's application.

Application for rehearing was duly filed, rehearing ordered, and upon said rehearing the commission again disallowed claimant's application, for the reason that "proof on file failed to show that the decedent received an injury in the course of and arising out of his employment, and for the reason that the proof on file failed to show that plaintiff, and said Gilford E. Uden and the said Alberta L. Uden, were either totally or partially dependent upon the deceased at the time of his death."

Thereafter, on December 9, 1936, Amy Uden filed in the Common Pleas Court of Summit county her petition appealing from the order of the Industrial Commission, The B. F. Goodrich Company being named the defendant inasmuch as it was a self-insurer under the Workmen's Compensation Act of Ohio.

Said Goodrich Company first demurred to claimant's petition, and, the demurrer being overruled, an answer was filed. In that answer, the defendant denied:

1. That C. J. Uden sustained an accidental injury which occurred in the course of or resulted from or arose out of his employment by the defendant.

2. * * *

3. That plaintiff was a member of the family of C. J. Uden or bore to him the relation of widow, lineal descendant, ancestor or sister, and that the plaintiff was either wholly or partially dependent upon C. J. Uden for support.

4. That Gilford Uden and Alberta Uden were children of C. J. Uden, or were members of the family of C. J. Uden, or bore to him the relation of lineal descendants, ancestors or brother or sister, or were either wholly or partially dependent upon C. J. Uden for support.

When the cause came on for trial in the Court of Common Pleas, the defendant, at the conclusion of plaintiff's evidence, made a motion to direct a verdict in its favor, which motion was sustained by the trial court, and a verdict as directed was returned by the jury. Motion for a new trial was duly filed and overruled, and judgment entered upon the verdict. Appeal upon questions of law now brings the matter into this court for review.

Several assignments of error are urged by appellant, which may be grouped as follows:

1. Error in the exclusion of evidence offered by appellant, and in the admission of evidence offered by appellee.

2. Error in sustaining the motion of the appellee for a directed verdict in its behalf.

3. That the judgment is contrary to law.

Disposition of the first assignment of error may be very briefly made. We have carefully read the record and we find no prejudicial error in the admission or exclusion of evidence.

As to the second assignment of error, it is conceded by both parties that the conclusion to be reached under the evidence contained in this record depends entirely upon the construction placed upon a portion of Section 1465-82, General Code, which reads as follows:

"* * * In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered

as dependent unless a member of the family of the deceased employee, or bears to him the relation of husband, or widow, lineal descendant, ancestor or brother or sister. The word 'child' as used in this act, shall include a posthumous child, and a child legally adopted prior to the injury."

It is contended by the appellant that the construction to be placed upon the word "family" is that which is claimed by the appellant to be the definition of the primary use of the word, as follows:

"The collective body of persons who live in one house, and under one head or manager; a household, including parents, children, and servants, and, as the case may be, lodgers or boarders."

It is, of course, the general rule with reference to the construction to be given to the wording contained in statutes, that, unless a contrary intention appears, the words are deemed to have been used in their general and ordinarily accepted meaning. It is also an accepted rule that, in construing the language of a statute, it is proper to consider the objects and purposes sought to be accomplished by the legislation, and also the various provisions thereof showing the legislative intent. It is our belief that the general or ordinarily accepted meaning of the word "family," as used in Section 1465-82, General Code, quoted *supra*, is the meaning which is defined as follows:

"4. A group comprising immediate kindred; esp., the group formed of parents and children, constituting the fundamental social unit in civilized societies. The family in modern societies is much more independent than in ancient and primitive communities, where, if it existed at all, it was directly subordinate to the clan." Webster's New International Dictionary of the English Language, 1923 Edition.

"3. The group of persons consisting of the parents and their children, whether actually living together or not; in wider sense, the unity formed by

those who are nearly connected by blood or affinity.''
The Oxford English Dictionary, 1933 Edition.

This conclusion is strengthened by the definition
of the word ''child'' as used in this act, wherein it is
specifically provided that said word shall include a
child *legally adopted prior* to the injury; it is also
strengthened by paragraph 4, and subparagraph (D)
thereunder, of the recent amendment of Section
1465-82, General Code, wherein ''prospective de-
pendents'' are defined. Those paragraphs, in part,
provide as follows:

''4. The following persons shall be presumed to
be wholly dependent for the support upon a deceased
employee: * * *

''(D) The commission may take into considera-
tion any circumstances which, at the time of the death
of the decedent, clearly indicate prospective de-
pendency on the part of the claimant and potential
support on the part of the decedent; provided that
no person shall be considered a prospective dependent
unless a member of the family of the deceased em-
ployee *and* bears to him the relation of husband, or
widow, lineal descendant, ancestor or brother or
sister. * * * '' (Italics ours.)

It is perfectly obvious from a reading of the record
in the instant case that the decedent, C. J. Uden, rec-
ognized a moral obligation upon his part to support
Amy V. Uden and her children, and his recognition
of that obligation was commendable in a high degree.
It must not be overlooked, however, that during all
of the time when C. J. Uden was contributing to the
support of said persons, the husband of said Amy V.
Uden and the father of said children, in recognition
of his legal obligation, was also voluntarily contribut-
ing to their support.

The law in Ohio, Section 7996, General Code, spe-
cifically provides as follows:

''The husband is the head of the family. He may

choose any reasonable place or mode of living, and the wife must conform thereto.''

Section 7997, General Code, provides:

''The husband must support himself, his wife, and his minor children out of his property or by his labor. If he is unable to do so, the wife must assist him so far as she is able.''

It is thus apparent that, during all of the time when it is claimed that said Amy V. Uden and her minor children were dependent upon the deceased employee, John Uden, the husband and father, respectively, of said parties, was the head of his family, charged by law with the obligation of supporting the members thereof; and the position of C. J. Uden, while commendable, was merely that of a volunteer with reference to the support of said Amy Uden and her children.

We have been unable to find, and counsel have not directed our attention to, any cases in Ohio where a claim similar to or identical with that urged in the instant case has been made in connection with the administration of the Workmen's Compensation Act. We are aware that there are cases outside of Ohio which do sanction an allowance, under workmen's compensation acts, where conditions somewhat similar to those presented by the instant case pertain; especially is this true of the case of *Holmberg* v. *Cleveland-Cliffs Iron Co.*, 219 Mich., 204, 189 N. W., 26. That case, however, differs from the instant case in that the whereabouts of the husband and father were unknown, and it does not appear that he was contributing to the support of his family during the time that the deceased employee was maintaining a home for the deserted wife and her children.

We are of the opinion that when the objects and purposes of the entire Workmen's Compensation Act are considered, proper conservation of the funds en-

trusted to the administration of the Industrial Commission under that act, and sound public policy, require the limiting of the meaning of the word "family," as used in the statute, in accordance with the definitions which we have hereinbefore approved.

Our attention has been directed to the cases of *Industrial Commission* v. *Drake,* 103 Ohio St., 628, 134 N. E., 465; *Industrial Commission* v. *Dell, Exrx.,* 104 Ohio St., 389, 135 N. E., 669, 34 A. L. R., 422; and *State, ex rel. Person,* v. *Industrial Commission,* 126 Ohio St., 85, 183 N. E., 920, and the claim urged that these cases hold that dependency is based upon the *right* to support rather than upon the actual fact of support.

While that proposition is not contained in the syllabi of those cases, it is specifically stated in some of the opinions, and is plainly the real basis for the conclusions announced, and has our entire approval.

It is the opinion of this court that under the express provisions of Section 1465-82, General Code, as we construe that statute, neither the appellant nor her minor children fall within the category of those who may claim to be dependent upon the deceased employee. For that reason, the trial court did not err in sustaining the defendant's motion for a directed verdict at the conclusion of the appellant's evidence.

. The judgment of the trial court will therefore be affirmed.

*Judgment affirmed.*

WASHBURN and DOYLE, JJ., concur.